UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 13

Richard S. Larson-Asplund,  Case No. 14-44240
a/k/a Rick Asplund,

Hon. Phillip J. Shefferly

Debtor.
_____/

**OPINION DENYING CONFIRMATION OF CHAPTER 13 PLAN**

**Introduction**

This matter is before the Court upon the Debtor's request for confirmation of his Chapter 13 plan and on the objections to the plan filed by his former spouse, Shelley B. Soleimani ("Soleimani").

Soleimani objects to the Debtor's plan on four grounds. First, Soleimani argues that she is the holder of a domestic support obligation, which is required to be paid in full during the life of the Debtor's plan as a priority claim pursuant to § 1322(a)(2) of the Bankruptcy Code. Second, Soleimani argues that the Debtor's plan is not proposed in good faith as required by § 1325(a)(3). Third, Soleimani argues that the Debtor's plan is not feasible as required by § 1325(a)(6). Fourth, Soleimani argues that the Debtor's bankruptcy case was not filed in good faith as required by § 1325(a)(7).

On September 17, 2014, the Court held an evidentiary hearing. Four witnesses testified: the Debtor, the Debtor's wife, Aidee Bonilla Ocampo, Soleimani, and one of the daughters of the Debtor and Soleimani. The Court received into evidence by stipulation exhibits 1, 3-10, and A-D. After carefully reviewing the parties' briefs and the evidence adduced at trial, the Court overrules

Soleimani's first objection but sustains Soleimani's second objection, and finds that the Debtor's plan is not proposed in good faith, as required by § 1325(a)(3). Because the Debtor's plan is not proposed in good faith, the Court denies the Debtor's request for confirmation, and does not reach Soleimani's other objections to confirmation.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2), 28 U.S.C. § 1334, and E.D. Mich. LR 83.50(a). This a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L).

## Facts

The Court finds the following facts.

The Debtor and Soleimani were married in 1992 and divorced in 2006. They had two children during their marriage (hereafter referred to as "Oldest Child" and "Youngest Child"). Their divorce was memorialized in a consent judgment of divorce ("Consent Judgment") (Ex. 3) entered by the State of Michigan Oakland County Circuit Court, Family Court Division, on March 6, 2006. The Consent Judgment was signed by both the Debtor and Soleimani, and by an attorney, Barry Fayne, who is identified on it as Soleimani's attorney. The Consent Judgment contains a section titled "Child Support" that requires the Debtor to pay specific amounts for child support for each of the two children. Separate from the Child Support section, the Consent Judgment also contains a section titled "College Education Expenses." This section states that the Debtor and Soleimani agree to each pay 50% of their two children's college expenses of tuition, books, fees, room and board for four years following their 18th birthday.

At the time of the Consent Judgment, the Debtor was working as a substitute teacher and collecting unemployment. Soleimani was a faculty member at Oakland Community College, with an income significantly greater than the Debtor's income. Since the Consent Judgment was entered, the Debtor has had a variety of jobs, none of them with a particularly high income. The Debtor has not taught school since the Consent Judgment was entered, and has made little effort to return to the classroom, even allowing his teaching certification to lapse. Presently, the Debtor is doing landscape work on an hourly basis for Premier Landscaping. In 2008, the Debtor married his present wife, Ocampo. Ocampo has her own business cleaning homes. Ocampo contributes on a monthly basis to the Debtor's household expenses. Although the Debtor has struggled financially since he and Soleimani divorced, he has managed to make his monthly child support payments under the Consent Judgment.

On March 31, 2011, the Debtor filed his first bankruptcy case, Chapter 7 case no. 11-49258. The Debtor obtained a discharge in this case on July 12, 2011.

After the Debtor's Chapter 7 case was over, the Debtor and Soleimani became involved in a dispute in the Oakland County Circuit Court over the meaning of the College Education Expenses provision in the Consent Judgment. By this time, the Oldest Child had turned 18 and was attending the University of Michigan, so the provision was now operative. Alleging that the Debtor failed to comply with his obligation under this provision, Soleimani filed a motion in the Oakland County Circuit Court to enforce it. The Debtor opposed the motion. In the Debtor's brief (Ex. 1) filed in opposition to the motion, the Debtor took the position that the College Education Expenses provision constitutes child support, and therefore can be modified by the Oakland County Circuit Court. The Debtor's brief then framed three specific issues for the Oakland County Circuit Court

to consider. The first issue pertained to whether the College Education Expenses provision is ambiguous. The second issue pertained to whether the College Education Expenses provision constitutes child support. And the third issue was whether the Oakland County Circuit Court could order child support in an amount that deviates from the child support guidelines enacted in Michigan.

On March 4, 2013, the Oakland County Circuit Court entered an Order Regarding the Debtor's Motion ("State Court Ruling") (Ex. D). In a question and answer format, the State Court Ruling responded to the three issues precisely as presented by the Debtor in his brief. Regarding the first issue, the State Court Ruling held that the College Education Expenses provision unambiguously requires both the Debtor and Soleimani to pay 50% of the college expenses, including tuition, books, fees, room and board. On the second issue, the State Court Ruling held that the College Education Expenses provision does not constitute child support. The State Court Ruling explained that the College Education Expenses provision is separate and distinct from the child support requirements of the Consent Judgment. The State Court Ruling found that, rather than child support, the obligation created by the College Education Expenses provision is an enforceable contract between the Debtor and Soleimani, which could be enforced by their adult children as third party beneficiaries of the contract. Finally, regarding the third issue, the State Court Ruling found that the Oakland County Circuit Court does have the authority to deviate from the child support guidelines in Michigan, but since the College Education Expenses provision is not child support, it did not implicate the child support guidelines.

Following the State Court Ruling, the Oakland County Circuit Court entered a money judgment on April 1, 2013 in favor of Soleimani and against the Debtor for $14,916.00 for a part

of the college expenses for the Oldest Child. Soon after the entry of this judgment, the Debtor filed his second bankruptcy case, Chapter 13 case no. 13-48654, on April 29, 2013.

Because of the filing of the Chapter 13 case, further proceedings by Soleimani against the Debtor in the Oakland County Circuit Court were stayed. However, the Debtor did not confirm a plan in this Chapter 13 case. On September 3, 2013, the Debtor filed a motion to voluntarily dismiss his Chapter 13 case, which the Court granted. With the Chapter 13 case having been dismissed, there was no longer any stay of the proceedings in the Oakland County Circuit Court. The Debtor and Soleimani then went back to that court to litigate their dispute over the College Education Expenses provision.

On February 26, 2014, the Oakland County Circuit Court held a hearing on Soleimani's renewed motion to enforce the College Education Expenses provision in the Consent Judgment. At the conclusion of the hearing, the Oakland County Circuit Court ruled in favor of Soleimani, and entered a handwritten order requiring the Debtor to "forthwith withdraw $10,000 from his 401(k) accounts, to be used toward [the Oldest Child]'s fall 2014 school expenses."[1] Subsequently, on March 20, 2014, the Oakland County Circuit Court further memorialized its ruling by entering a money judgment ("Money Judgment") (Ex. 4) in favor of Soleimani and against the Debtor for $32,160.55, representing 50% of the Oldest Child's college expenses up to that date for the 2012-13 and 2013-14 school years.

On March 15, 2014, before the Money Judgment was entered, but after the hearing on February 26, 2014 that led to the Money Judgment, the Debtor filed this Chapter 13 case, his second

---

[1] This handwritten order was not introduced into evidence at the hearing held on September 17, 2014, but was received into evidence as exhibit 9 at an earlier evidentiary hearing held in this case on May 15, 2014.

Chapter 13 case and his third bankruptcy case altogether.  The Debtor then moved to extend the automatic stay under § 362(c)(3), which was necessary because his first Chapter 13 case had been dismissed within the past year.  Soleimani filed her own motion to dismiss the case.  The Court conducted an evidentiary hearing on the two motions on May 16, 2014.  At the conclusion of the hearing, the Court denied Soleimani's motion.  The Court granted in part the Debtor's motion to extend the automatic stay, but did not extend the stay to prevent Soleimani from enforcing the February 26, 2014 handwritten order that required the Debtor to withdraw the $10,000 from his 401(k) accounts.  In other words, the Money Judgment was stayed, even though the requirement to withdraw and pay over the $10,000 was not.  After the evidentiary hearing, this case continued in Chapter 13.

On June 4, 2014, the Debtor filed a first amended Chapter 13 plan (Ex. 8).  The Debtor's first amended plan is a three year plan that provides for a monthly plan payment of $257.20.  The first amended plan treats the Debtor's obligation under the College Education Expenses provision as a class 9 non-priority unsecured claim.  The first amended plan provides for a minimum dividend to class 9 creditors of zero dollars.  The first amended plan expressly acknowledges that the Debtor is not eligible for a discharge of any debts in this case pursuant to § 1328 because of the fact that he received a discharge in his Chapter 7 case, which was filed less than four years before this Chapter 13 case began.  The first amended plan states that the Debtor does not have any domestic support obligations that are in arrears as of the date of the filing of his Chapter 13 petition, and that the Debtor's only domestic support obligation at all is the monthly child support payment that he continues to pay to the Oakland County Friend of the Court for the Youngest Child.

At the evidentiary hearing, the Debtor testified credibly about his employment history and his current income. Ocampo has some difficulty speaking English, as it is not her first language. Although there is some dispute about the precise amount of income contributed by Ocampo to the Debtor's household, Ocampo testified credibly that she earns $725 per month and sends $50 per month to her father. The Court finds that all of the Debtor's disposable income is contributed to his first amended plan. However, even according to the Debtor's own calculations, if the Debtor's first amended plan is confirmed, the only distributions that will be made under it are to priority creditors such as the Debtor's attorney, the Internal Revenue Service and the Chapter 13 Trustee, with only a de minimis distribution to class 9 unsecured creditors, including Soleimani.

## **Discussion**

Soleimani's first objection to confirmation is that the Debtor's first amended plan fails to pay the college expenses for the Oldest Child as required by the College Education Expenses provision in the Consent Judgment. This objection is premised on Soleimani's contention that this obligation is a domestic support obligation within the meaning of § 101(14A) of the Bankruptcy Code, a provision added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 101(14A) defines a "domestic support obligation" in relevant part as:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–
> (A) owed to or recoverable by–
>     (i) a spouse, former spouse, or child of the debtor or
>     such child's parent, legal guardian, or responsible
>     relative . . . [and]
> (B) in the nature of alimony, maintenance, or support (including
> assistance provided by a governmental unit) of such spouse, former
> spouse, or child of the debtor or such child's parent, without regard
> to whether such debt is expressly so designated . . . .

11 U.S.C. § 101(14A).

According to Soleimani, the Debtor's obligation under the College Education Expenses provision is a debt that is owed to or recoverable by a former spouse or child of the Debtor, is in the nature of support, and is established by an order from a court of record. The Debtor disputes only one issue under § 101(14A): whether the debt for the College Education Expenses is "in the nature of . . . support." If the debt is a domestic support obligation, then it is entitled to priority treatment under § 507(a)(1)(A). If not, the debt is not entitled to priority treatment under § 507(a)(1)(A), but is relegated to treatment as a non-priority class 9 unsecured claim. This is an important distinction because § 1322(a)(2) requires payment in full of priority claims: "The plan . . . shall provide for the full payment . . . of all claims entitled to priority under section 507 of this title . . .", and the Debtor's first amended plan does not provide for payment in full of this claim.

Initially, Soleimani argues that the doctrine of judicial estoppel bars the Debtor from contending that the College Education Expenses provision is not in the nature of support because the Debtor took a contrary position before the Oakland County Circuit Court. Specifically, Soleimani points to the brief (Ex. 1) that the Debtor filed in the Oakland County Circuit Court in which he urged that court to treat the College Education Expenses provision as child support. The Court disagrees with Soleimani. The doctrine of judicial estoppel only applies where a party *succeeds* in persuading a court to accept a position but then later takes an inconsistent position in a separate proceeding. See White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 476 (6th Cir. 2010). In this case, the Debtor did not prevail in Oakland County Circuit Court on his position that the College Education Expenses provision constitutes child support. Therefore, he is not judicially estopped from taking an inconsistent position in this Chapter 13 case.

-8-

Determining if an obligation is in the nature of support in bankruptcy is a federal question. Long v. Calhoun (In re Calhoun), 715 F.2d 1103, 1107 (6th Cir. 1983) (citations omitted). "When a court 'determin[es] what constitutes debt "in the nature of alimony, maintenance, or support" under § 101(14A), the case law construing pre-BAPCPA § 523(a)(5), which utilized the same language, is relevant.'" In re Palmieri, no. 11-51224, 2011 WL 6812336, at *4 (Bankr. E.D. Mich. Nov. 21, 2011) (quoting In re Boller, 393 B.R. 569, 574 (Bankr. E.D. Tenn. 2008)). In Rugiero v. DiNardo (In re Rugiero), 502 Fed. Appx. 436, 2012 WL 48000559 (6th Cir. Oct. 10, 2012), the Sixth Circuit considered whether a debt was "in the nature of support" as required by § 101(14A). The Court applied a well-settled test articulated in a pre-BAPCPA case, Sorah v. Sorah (In re Sorah), 163 F.3d 397 (6th Cir. 1998), which analyzed whether a debt was in the nature of support in the context of an action for non-dischargeability. Rugiero, 502 Fed. Appx. at 439. Sorah instructs a bankruptcy court to look to traditional state law indicia that are consistent with support obligations. These include, but are not limited to, "(1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits." Sorah, 163 F.3d at 401. "An award that is designated as support by the state court and has the above indicia of support (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court." Id. "The burden of demonstrating that an obligation is in the nature of support is on the non-debtor." Fitzgerald v. Fitzgerald (In re Fitzgerald), 9 F.3d 517, 520 (6th Cir. 1993).

Though Sorah characterized the three above factors as the *traditional* indicia of support, the court did not hold they were the *exclusive* factors that could be considered. Sorah, 163 F.3d at 401.

"[L]ower courts need not limit their analyses to consideration of the three indicia discussed above, but may also consider other factors." McNamara v. Ficarra (In re McNamara), 275 B.R. 832, 837 (E.D. Mich. 2002) (citing Sorah, 163 F.3d at 401) (other citation omitted). Therefore, even if a creditor does not establish the conclusive presumption through the three Sorah factors, the Court may nevertheless resort to other factors to find that an obligation is in the nature of support. Id.; see also Andrus v. Ajemian (In re Andrus), 338 B.R. 746, 754-55 (Bankr. E.D. Mich. 2006) (finding that not all of the three Sorah factors were present, and looking to other indicia to determine whether the debt was for support).

The College Education Expenses provision does not bear all three of the traditional state law indicia of support set forth in Sorah. First, the Consent Judgment contains an express Child Support section that does not include the children's college education expenses. Instead, it is set forth in a separate section altogether. Nor is it labeled by the Consent Judgment as child support. Most importantly, the Debtor and Soleimani brought this very issue before the Oakland County Circuit Court. In the State Court Ruling, the Oakland County Circuit Court expressly found that the Debtor's obligation under the College Education Expenses provision is not a child support obligation. The Oakland County Circuit Court described it instead as a "contractual obligation." The State Court Ruling, while not necessarily dispositive for purposes of § 101(14A), strongly supports the Debtor's contention that his debt under this provision is not in the nature of support. See Fitzgerald, 9 F.3d at 521 (expressing that a bankruptcy court's review of divorce judgments should not be overly intrusive "into the states' traditional authority over domestic relations" issues). The first indicia of support described in Sorah does not help Soleimani in this case.

-10-

14-44240-pjs    Doc 85    Filed 10/07/14    Entered 10/08/14 06:29:18    Page 10 of 18

The second traditional state law indicia described in <u>Sorah</u> arguably does help Soleimani. The College Education Expenses provision in the Consent Judgment contemplates a direct payment from Debtor to Soleimani, in contrast to an assumption of a debt.

The third traditional state law indicia identified in <u>Sorah</u> cuts strongly in favor of the Debtor. The College Education Expenses provision is not subject to any of the types of contingencies described in <u>Sorah</u>, such as death, remarriage, or receipt of Social Security benefits, events that relate directly to one's *need* for support. Further, the College Education Expenses provision is unaffected by the existence of other resources for the Debtor's children, such as financial assistance, scholarships, Soleimani's income, the children's own income, or whether the children themselves become financially self-sufficient. Finally, the College Education Expenses provision obligates the Debtor to pay for such expenses for four years, without regard to whether the children graduate early or have a need that extends more than four years.

At most, only one of the traditional state law indicia of <u>Sorah</u> favors Soleimani's contention that the College Education Expenses provision is in the nature of support. But that does not end the inquiry. Even though Soleimani is not entitled to the conclusive presumption described in <u>Sorah</u>, the Court may still find that there are other factors present that warrant a finding that this debt is in the nature of support. <u>In re McNamara</u>, 275 B.R. at 837. However, a review of the evidence in this case beyond the three traditional state law indicia of <u>Sorah</u> only confirms the conclusion that Debtor's obligation under the College Education Expenses provision is not in the nature of support.

First, the provision only becomes operative once the children are no longer minor children. It expressly provides that it applies only after they turn 18. While in some exceptional circumstances in Michigan an obligation to provide for children over the age of 18 may be

considered as support, that is the exception, not the rule. See Mich. Comp. Laws § 552.605b(5) (dictating that an obligation to provide child support after the age of majority must meet one of four conditions in order to be enforceable, all of which require the agreement of both parties). A child over 18 is considered to be "an adult of legal age for all purposes whatsoever . . . ." Mich. Comp. Laws § 722.52(1). Payment for their living expenses is ordinarily not considered by Michigan courts to be a support obligation, aside from some limited circumstances when the child is between 18 years of age and 19 years and 6 months of age. See Mich. Comp. Laws § 552.605b(2) (providing that a court "may order child support" for a child who is "regularly attending high school on a full-time basis . . . but in no case after the child reaches 19 years and 6 months of age").

Soleimani cites Wagner v. Wagner, 306 N.W.2d 523 (Mich. Ct. App. 1981) for the proposition that an agreement to pay for college education expenses after the age of majority can still be enforced as child support in Michigan. The issue in Wagner was whether a Michigan court "may order payment of child support beyond the age of majority on the basis of the parties' voluntary stipulation to that effect." Id. at 524. The Wagner court first reviewed Michigan authorities clearly holding that a Michigan court has no jurisdiction to *order* support once a child reaches the age of majority, but then distinguished such authorities by pointing out that the defendant in the case before it had "*voluntarily stipulated* that he would pay support until his sons reached the age of 18 or completed high school, whichever last occurred." Id. Wagner then held that Michigan law does not *prohibit* a Michigan court from enforcing such a voluntary agreement. In contrast to Wagner, the issue before this Court is not whether the Oakland County Circuit Court had the jurisdiction to enforce the College Education Expenses provision in the Consent Judgment. It did. The only issue before this Court is whether the College Education Expenses provision meets

-12-

the definition of a domestic support obligation under § 101(14A). <u>Wagner</u> does not provide a basis to find that the College Education Expense provision is in the nature of support. Therefore, <u>Wagner</u> does not help Soleimani's position on this issue.

Second, it is important to keep in mind the particular type of expenses at issue in this case, namely, college expenses. While college is undoubtedly desirable, it is not a required expenditure. It is not necessary for one to live in the same sense as the payment for food, housing, clothing or health care. <u>See</u> 2013 Mich. Child Support Formula Manual § 1.02 (State Court Administrative Office, Friend of the Court Bureau, effective Jan. 1, 2013) (noting that a "child support obligation includes payments for the general care and needs of a child, . . . medical support . . . and child care expenses").

Third, the Debtor's obligation to pay under the College Education Expenses provision in the Consent Judgment is totally open ended, with no cap on the amount that the Debtor may have to pay. On its face, the College Education Expenses provision applies the same way, whether the children go to a state college with a modest expense, or to a private school, even Harvard, with a significantly greater expense. This provision is not tailored to ensure that the children maintain a minimum and necessary standard of living; instead, it is an unconditioned promise to pay the children's college expenses that depends only on *their* personal preferences, rather than consideration of need, feasibility or reasonableness. The open ended nature of the College Education Expenses provision, with no limit on the amount required to be paid, supports the Debtor's position. The Debtor and Soleimani entered into an enforceable contract to each pay 50% of their children's college expenses. But just because their children are the beneficiaries of this contract does not mean that it is a contract for child support.

-13-

In sum, the evidence in this case demonstrates that the obligation to pay college expenses incurred by the Debtor in the Consent Judgment for his two children is not an obligation in the nature of support. Therefore, it lacks one of the necessary elements for a domestic support obligation under § 101(14A). Because it is not a domestic support obligation, Soleimani does not have a priority claim under § 507(a)(1)(A) that is required by § 1322(a)(2) to be paid in full under the Debtor's plan. Soleimani's first objection to confirmation is overruled.

Soleimani's second objection to confirmation is that the Debtor's first amended plan is not proposed in good faith as required by § 1325(a)(3). Once the issue of a Chapter 13 debtor's good faith has been raised by the trustee, a party in interest or the court, the debtor has the burden of proof to establish his good faith. Harden v. Caldwell (In re Caldwell), 895 F.2d 1123, 1126 (6th Cir. 1990) (appeal after remand). To determine whether a Chapter 13 plan is proposed in good faith, courts have considered a non-exclusive list of factors, none of which are dispositive. Alt v. United States (In re Alt), 305 F.3d 413, 419 (6th Cir. 2002). The Sixth Circuit has explained that it is not conceivable to list every potential factor that could weigh into this decision. Harden v. Caldwell (In re Caldwell), 851 F.2d 852, 860 (6th Cir. 1988). "[G]ood faith is a fact-specific and flexible determination." In re Alt, 305 F.3d at 419 (citation omitted). Ultimately, "[t]he decision should be left simply to the bankruptcy court's common sense and judgment." Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d 1030, 1033 (6th Cir. 1988).

Many of the factors identified in Alt and Caldwell have no application in this case. However, the following six factors described in those cases are highly relevant to the present decision: 1) the frequency with which the Debtor has sought relief; 2) whether the debts dealt with by the Debtor's plan are nondischargeable; 3) the amount of the Debtor's proposed payments; 4) the

Debtor's efforts to pay or to avoid repaying his debt; 5) the motivation and sincerity of the Debtor in seeking Chapter 13 relief; and 6) whether the Debtor is attempting to abuse the spirit of the Bankruptcy Code. See In re Alt, 305 F.3d at 419 (listing the foregoing as relevant factors for determining if a plan was filed in good faith). These factors apply as follows.

First, this is the Debtor's third bankruptcy case. He has been a debtor in these three cases for nearly three continuous years.

Second, in this current case, the Debtor is not eligible to obtain a discharge of *any* of his debts because of the discharge that he obtained in his prior Chapter 7 case.

Third, the Debtor's schedules filed in this case (Ex. 5) list very few creditors. Schedule D lists a secured claim for a mortgage on the Debtor's former residence, but explains that the Debtor quit-claimed this property to Soleimani, and discharged any personal liability for the mortgage in his Chapter 7 case. Schedule E lists income tax debts owing to the Internal Revenue Service and the State of Michigan in the aggregate amount of $1,409.35. Schedule F lists a total of $40,578.57 in unsecured debts, which includes a debt of $30,000 owing to the Oldest Child under the College Education Expenses provision. Schedule F does not list the Money Judgment, but it does list five other unsecured debts: two for legal services, one cell phone bill, one personal loan from the Debtor's mother, and one student loan. The amount of the Money Judgment is more than three times the amount of all of the Debtor's other debts combined. Despite the fact that the Debtor is not eligible for a discharge, his first amended plan proposes a minimum distribution of zero dollars to his class 9 general unsecured creditors, including Soleimani, by far his largest creditor.

Fourth, the Debtor and Soleimani disagree as to the number and amount of payments the Debtor made on the Money Judgment pre-petition. The Debtor testified that he made four payments

-15-

of $200, and wrote two other checks that were not cashed. Soleimani testified that the Debtor made four payments of $150. However, they both testified that the Debtor made no payments until after he was ordered to do so by the Oakland County Circuit Court. Further, the Debtor testified that he tried to get the Oakland County Circuit Court to reduce his payments on the Money Judgment. The Debtor also amended his schedules (Ex. 7) to disclose and claim an exemption in the $10,000 that he was ordered to withdraw from his 401(k) account and pay to Soleimani. Although the Debtor thought that the payment was "a done deal," he still hoped to recover it from Soleimani after his attorney suggested to him that it might be possible. The nominal amount of the Debtor's pre-petition payments on the Money Judgment, his efforts to have the Oakland County Circuit Court reduce those payments, the timing of the filing of this Chapter 13 case, like the Debtor's previous Chapter 13 case–immediately after an unfavorable ruling from the Oakland County Circuit Court–and the Debtor's continued hope to recover the $10,000 payment from Soleimani, combine to show that the Debtor has made little or no efforts to pay Soleimani, but has made great efforts to avoid paying her.

Fifth, as to the Debtor's motivation and sincerity, there is no evidence in the record that the Debtor needs any relief from any of his creditors other than Soleimani. There is no evidence that any creditor of the Debtor has taken any collection action against him, or has even requested payment from him, other than Soleimani. There is nothing about the treatment of the Debtor's other creditors in his first amended plan, other than Soleimani, that the Debtor could not just as easily accomplish outside of Chapter 13, without incurring Chapter 13 trustee and attorney fees. Basically, the only thing that the first amended plan accomplishes is to stay, rather than pay, the Debtor's creditors for three years. The record is devoid of any probative evidence to show that this

-16-

14-44240-pjs    Doc 85    Filed 10/07/14    Entered 10/08/14 06:29:18    Page 16 of 18

Chapter 13 filing and the Debtor's first amended plan, are motivated by anything other than a desire to delay Soleimani from enforcing the Money Judgment. The terms of the Debtor's first amended plan, with its minimum guaranty of zero dollars to Soleimani and the Debtor's other unsecured creditors, confirms this fact.

Sixth, a plan that proposes de minimis payments on nondischargeable debts, but prevents collection on those debts for the life of the plan is, in the Court's view, an attempt to abuse the spirit of the Bankruptcy Code. The Debtor's first amended plan neither pays Soleimani nor seeks to discharge her debt. It is not a plan to pay the Debtor's creditors, which is the purpose of Chapter 13. Instead, it is a plan to not pay Soleimani, and to delay her from collecting on the Money Judgment and enforcing the College Education Expenses provision in the Consent Judgment.

The Court finds that the Debtor has not met his burden of proving that his first amended plan is proposed in good faith as required by § 1325(a)(3) of the Bankruptcy Code. For that reason alone, the Debtor's first amended plan cannot be confirmed.[2]

## Conclusion

The Court agrees with the Debtor that the provision in the Consent Judgment to pay College Education Expenses is not a domestic support obligation and does not have to be paid in Chapter 13 as a priority claim. However, the Court agrees with Soleimani that this is not a plan proposed in good faith. There is no direct evidence in the record regarding the Debtor's true intentions concerning the payment of the children's college expenses once his proposed plan, if confirmed, is

---

[2] The Court notes that both the Debtor and Soleimani made a number of other legal arguments in their briefs that are not specifically mentioned in this opinion. The Court has considered all of them. Because Soleimani's § 1325(a)(3) objection is sustained, the Court need not express a view about her other objections, or the Debtor's response to those objections, as they are now moot.

completed.  But it appears to the Court that this is a plan designed to simply keep Soleimani at bay for sufficient time until the Debtor is able to dismiss this case when he becomes eligible to file a new Chapter 13 case in which he can seek a discharge of Soleimani's debt.  The Court cannot find that a plan that is predicated solely on delaying enforcement of the Money Judgment, despite acknowledging that it is not a dischargeable obligation, is a plan proposed in good faith.  For these reasons, the Court denies confirmation.  The Court will enter a separate order consistent with this opinion.

.

**Signed on October 07, 2014**

       **/s/ Phillip J. Shefferly**
       **Phillip J. Shefferly**
       **United States Bankruptcy Judge**